```
             IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF OHIO
                        EASTERN DIVISION
```

Sharon M. Muncey,              :

      Plaintiff,            :

    v.                        :        Case No.  2:15-cv-0893

Carolyn W. Colvin, Acting      :        JUDGE JAMES L. GRAHAM
Commissioner of Social                  Magistrate Judge Kemp
Security,                      :

      Defendant.            :

### REPORT AND RECOMMENDATION

#### I.  Introduction

Plaintiff, Sharon M. Muncey, filed this action seeking review of a decision of the Commissioner of Social Security denying her application for social security disability benefits. That application was filed on September 26, 2011, and alleged that Plaintiff became disabled on April 7, 2011.

After initial administrative denials of her claim, Plaintiff was given two video hearings before an Administrative Law Judge, the first on April 16, 2013, and the second on September 12, 2013.  In a decision dated October 18, 2013, the ALJ issued a decision denying benefits.  That became the Commissioner's final decision on January 21, 2015, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the administrative record on May 26, 2015.  Plaintiff filed her statement of specific errors on June 29, 2015, to which the Commissioner responded on October 16, 2015.  Plaintiff filed a reply brief on November 4, 2015, and the case is now ready to decide.

#### II.  The Lay Testimony at the Administrative Hearing

Plaintiff, who was 60 years old at the time of the first

administrative hearing and who has a high school education, testified as follows.  Her testimony appears at pages 45-64 and pages 31-34 of the administrative record.

At the first hearing, Plaintiff testified that she did not work from April 7, 2011 until September, 2012, when she began a part-time job.  She was a cashier four hours a day, four or five days a week, getting paid ten dollars an hour.  She was able to sit or stand as needed, and did not lift more than five pounds.  She had initially tried to work full-time but was unable to do so.

Plaintiff said her symptoms included being able to walk or stand for only ten or fifteen minutes, and having difficulty getting up after sitting for a while.  She had pain in her legs, hips, and back which varied in intensity, but she had bad days about half the time.  She did not like to sit for more than an hour, and she could lift ten pounds.  She had been prescribed a cane and used it daily.

On a typical day, Plaintiff ate, watched television, got ready for work, worked, helped with laundry, did dishes, and took turns cooking with her husband, who was also disabled.  She still did some cleaning but it took longer than it used to.  Her husband did the grocery shopping.  Plaintiff also described pain and weakness in her right shoulder and tingling in her hands and feet.  She could climb a flight of stairs using her cane, but it was painful to do.  Her treatment consisted of medication and a heating pad.

In response to additional questions from the ALJ, Plaintiff said that she had been laid off from her prior job, and that it involved some standing and walking as well as lifting up to 35-pound boxes.  Before that, she was a mail or shipping clerk, a job with a 50-pound lifting requirement.  She had been missing one day a month of work due to her illness before she was laid

off.

At the second administrative hearing, Plaintiff said she was working twelve hours per week. Working four or five hours at a time was totally exhausting. She also visited the restroom about ten times during a typical shift. She continued to have trouble stooping and bending. Finally, she had arthritis in her hands which caused her occasionally to drop objects.

### III. The Medical and Educational Records

The medical records in this case are found beginning on page 336 of the administrative record. Because neither of Plaintiff's claims of error relate directly to the medical records, the Court provides only a brief overview of them here.

Plaintiff's treating physician was Dr. Sleesman. He had seen her for a variety of ailments, including asthma, depression, diabetes, hyperlipidemia, hypertension, obesity, overactive bladder, peripheral neuropathy, GERD, fibromyalgia, and fatigue. Shortly after she lost her job she said that it had fatigued her to the point where she could no longer work. Prior to that she had reported back pain radiating into her legs. She had been taking various pain medications since at least 2005. He completed a medical assessment form on April 4, 2013, finding that due to multiple medical problems, Plaintiff could lift only five pounds, stand for only one or two hours in a workday, and sit for only two to three hours. She also had a number of postural limitations and some reaching restrictions. (Tr. 561-64).

Dr. Kroger was the consultative medical examiner. His report is based on seeing Plaintiff on May 3, 2013. Plaintiff described pain in her low back, hips, and knees, which she had experienced for 20 years, as well as a history of fibromyalgia. She had a short-strided shuffling gait and walked with a cane. She had 14 of 18 trigger points positive for fibromyalgia and

showed tenderness to palpation in her legs and knees.  Strength and range of motion were normal.  Dr. Kroger said she could lift 20 pounds and stand for two hours at a time.  (Tr. 565-67).

Finally, two state agency physicians reviewed the records, both concluding that Plaintiff could do a limited range of medium work.

### IV.  The Vocational Testimony

Vocational testimony was taken at both administrative hearings.  At the first hearing, Nancy Borgeson was called to testify.  She summarized Plaintiff's work history as consisting of payroll clerk and mail clerk.  The first was semiskilled and sedentary although Plaintiff performed it at the medium level.  The second was light and unskilled, but Plaintiff also did that job at the medium exertional level.  Ms. Borgeson was then asked about jobs available to someone of Plaintiff's age, education, and work experience who could work at the sedentary level, walk or stand for only ten minutes at a time, could occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds, could occasionally stoop but rarely kneel or crouch, and could never crawl.  According to Ms. Borgeson, those limitations were consistent with the job of payroll clerk as it was ordinarily performed.  Being off-task for fifteen percent of the day would preclude employment, however, as would missing one day of work per month on a consistent basis or being unable to sit, stand, and walk for a total of eight hours in a day.  The payroll clerk job would not be affected by a restriction on overhead reaching or on exposure to environmental hazards, however.  (Tr. 64-68).

At the second hearing, a different vocational expert, Dr. Richard Oestreich, was called to testify.  His testimony begins at page 35 of the administrative record.  He described Plaintiff's past employment slightly differently than did Dr. Borgeson, but did identify one sedentary job, credit clerk or

receptionist. He agreed with Dr. Borgeson that someone who could not sit, stand, or walk for a total of eight hours in a workday could not be employed. He was then given a different hypothetical which described someone who could sit for eight hours, stand and walk for four (two hours at a time), lift up to 20 pounds, used a cane to walk, could not balance, could rarely stoop, could not kneel, crouch, or crawl, and had some other restrictions as well. Dr. Oestreich said that such a person could, if use of a cane was eliminated from the hypothetical, do Plaintiff's past sedentary work.

      V.   <u>The Administrative Law Judge's Decision</u>

The Administrative Law Judge's decision appears at pages 11-21 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2016. Next, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of April 7, 2011. Going to the second step of the sequential evaluation process, the ALJ concluded that Plaintiff had severe impairments including degenerative disc disease, fibromyalgia, obesity, and related diabetes, hypertension, and hyperlipidemia. The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to step four of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform work at the sedentary exertional level with certain restrictions. She could occasionally lift and carry ten pounds, could stand and walk for no more than ten minutes at a time, used a cane to ambulate, could occasionally climb ramps and stairs and

-5-

occasionally stoop, could rarely kneel or crouch, and could never crawl and could never climb ladders, ropes, or scaffolds.  The ALJ found that, with these limitations, Plaintiff could do her past relevant job as a payroll clerk.  Consequently, the ALJ determined that Plaintiff was not entitled to benefits.

      VI.  <u>Plaintiff's Statement of Specific Errors</u>

In her statement of specific errors, Plaintiff raises two issues: (1) the ALJ's step four finding was inconsistent with the vocational expert's testimony and therefore not supported by substantial evidence; and (2) the ALJ improperly applied fibromyalgia ruling SSR 12-2p in evaluating Plaintiff's claim.  These issues are evaluated under the following legal standard.

<u>Standard of Review.</u>  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'"  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Company v. NLRB</u>, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'"  <u>Id</u>.  <u>LeMaster v. Weinberger</u>, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  <u>Harris v. Heckler</u>, 756 F.2d 431, 435 (6th Cir. 1985); <u>Houston v. Secretary</u>, 736 F.2d 365, 366 (6th Cir. 1984); <u>Fraley v. Secretary</u>, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'"  <u>Beavers v. Secretary of Health, Education and Welfare</u>, 577 F.2d 383, 387 (6th Cir. 1978) (quoting <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951)); <u>Wages v. Secretary of Health and Human Services</u>, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court

would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

      A.   Inconsistency with the Vocational Testimony

Plaintiff first argues that the ALJ's finding, at step four of the sequential evaluation process, that Plaintiff could still perform her past relevant work is not supported by the vocational testimony. She contends that the testimony of the two different vocational experts was not consistent and that the ALJ erred by not addressing and resolving those inconsistencies. She also asserts that neither vocational expert was actually asked a question which incorporated all of the limitations contained in the ALJ's residual functional capacity finding.

In response, the Commissioner argues that the first vocational expert, Ms. Borgeson, was asked an appropriate hypothetical question; as the Commissioner puts it, "the hypothetical question posed to this vocational expert ... incorporated limitations the ALJ set forth in his RFC finding ...." Memorandum in Opposition, Doc. 17, at 7. Because this is so, says the Commissioner, there was no error in the ALJ's decision to rely upon the answer to that question, and no need to explain why the ALJ chose not to credit Dr. Oestreich's testimony on essentially the same issue. Plaintiff disputes the factual premise of this argument, again asserting that "[n]either vocational expert testified that [Plaintiff] could perform her past relevant work, given the specific limitations the ALJ found in the RFC." Plaintiff's reply, Doc. 18, at 2.

The ALJ's decision is not a model of clarity on the issue of which vocational expert's testimony was relied on. Rather, the ALJ said simply that "[t]he vocational expert testified that an individual with the same residual capacity as the claimant would

-7-

be able to complete the claimant's past work as a payroll clerk as generally performed." Given that it was Ms. Borgeson who identified that job as payroll clerk (Dr. Oestreich characterized it as credit clerk/receptionist), it is logical to assume that it was her testimony to which the ALJ referred.

It is true that Ms. Borgeson was first asked a hypothetical question which did not completely match the ALJ's residual functional capacity finding. (Tr. 66). The only difference was that the question did not include the need to use a cane when walking, which, under the hypothetical posed, was limited to ten minutes at a time and no more than two hours total in a workday. Plaintiff's counsel later asked that very question, however: "I just wanted to add ... with the sitting and walking for two hours, if she had to use a cane or any other type of assistance device, would that change?" (Tr. 68). Dr. Borgeson replied: "Well if she had a sedentary job, that wouldn't necessarily prevent her from doing that work." Id. This excerpt from the transcript confirms the Commissioner's argument that, indeed, Ms. Borgeson was asked a hypothetical question (actually a combination of two questions) which incorporated all of the limitations imposed by the ALJ's residual functional capacity finding. Additionally, the Court finds that a reasonable interpretation of Ms. Borgeson's testimony in response to the series of questions she was asked is that the sedentary job Plaintiff previously performed, whatever it was labeled, could be done by someone who needed to use a cane whenever he or she stood up to walk. Thus, considering only Ms. Borgeson's testimony, the ALJ had a substantial basis for his finding that Plaintiff could do at least one of her past relevant jobs even if she had to use a cane.

Plaintiff's other argument, however, is that the ALJ erred by neither recognizing nor resolving the conflict between Ms.

Borgeson's testimony and the responses given by Dr. Oestreich at the second administrative hearing.  Without citing to any relevant case law, Plaintiff argues that this represents impermissible "cherry-picking" of the evidence and requires a remand for an explanation about why the ALJ credited Ms. Borgeson's testimony over that of Dr. Oestreich, whom Plaintiff describes as "better credentialed ...."  Statement of Errors, Doc. 10, at 14 n.4.

    The Court does not find merit in this argument.  First, Dr. Oestreich did not testify unequivocally that use of a cane was inconsistent with the ability to perform Plaintiff's past sedentary work.  Rather, he said that "an employer would not hire her with a cane except by accommodation."  (Tr. 38).  The ALJ then distinguished between hiring factors and physical ability to do the work, saying "I'm not looking at hiring factors, I want to know if they can do the job or not."  Dr. Oestreich responded "Yes."  Id.  While that is an ambiguous response, it also indicates that there is not a direct conflict between what he said and what Ms. Borgeson said.  Plaintiff's counsel had the opportunity to clarify the record at that point, but, although Dr. Oestreich was asked several questions by counsel about his testimony, none of them touched on this point.  The law appears clear that use of a cane, by itself, is not work-preclusive.  See SSR 96-9p:  "Since most unskilled sedentary work requires only occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds, an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand."  Consequently, a reasonable person could also have concluded that Dr. Oestreich did not testify that Plaintiff could not do her past relevant work if she had to use a cane, and simply said that it would make

-9-

it hard for her to get hired. Without there being a direct conflict, the ALJ had no duty to explain why he chose to rely on Ms. Borgeson's testimony, and, as the Court has already held, it was given in response to a hypothetical question which incorporated all of the relevant limitations and supported the factual finding that Plaintiff, with those limitations, could do her past work. That is enough to sustain the ALJ's decision on this point.

### B. Fibromyalgia Ruling 12-2p

Plaintiff's other argument is that the ALJ did not properly evaluate her most significant impairment, fibromyalgia. She points out that under SSR 12-2p, an ALJ must take into account both the exertional and non-exertional restrictions caused by fibromyalgia, and argues that the ALJ improperly found her testimony about such restrictions not to be credible. In her reply, she changes the nature of her argument somewhat, contending that the ALJ impermissibly based his findings on the lack of objective medical evidence supporting Plaintiff's claim of debilitating symptoms. The Commissioner argues, on the other hand, that the additional symptoms which Plaintiff testified to did not have any support in the record. To that extent, the Commissioner would appear to be arguing that the ALJ properly discounted Plaintiff's testimony to the extent that it was inconsistent with the ability to do a limited range of sedentary work.

When analyzing this issue, the ALJ first commented that Plaintiff's treatment for her various ailments was conservative in nature. He next noted that she had been able to work despite her pain. He discounted her claim that she had to elevate her legs throughout the day because she did not have a medical condition requiring that. He also expressed skepticism that she provided no care to her disabled husband because she was working part-time, and said that her receipt of unemployment benefits

-10-

also undercut her credibility because she held herself out as ready, willing, and able to work.  Finally, he pointed out that when she went back to work in 2012, she worked 70 hours every two weeks for some time, and although she was unable to keep up that pace, it did indicate abilities beyond those she testified to.

After assessing Plaintiff's credibility, the ALJ turned to the medical evidence.  First, he gave great weight to Dr. Kroger's consultative evaluation, stating that it was consistent with the medical evidence.  He gave lesser weight to Dr. Sleesman's opinion, concluding that it was both unsupported by objective evidence and that it contained restrictions greater than those to which Plaintiff herself testified and which were involved in her work and daily activities.  Finally, he gave some weight to the opinions of the state agency reviewers, although he found that due to additional medical evidence and testimony, they overstated Plaintiff's abilities.

It is true, as Plaintiff argues, that fibromyalgia patients do not usually present with many objectively-measurable symptoms of pain or restrictions.  As the Court of Appeals noted in Rogers v. Comm'r of Social Security, 486 F.3d 234, 243 (6th Cir. 2007), "fibromyalgia can be a severe impairment and that, unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs." Consequently, it is not proper for an ALJ to reject a claimant's assertion of disabling symptoms solely on the basis of an absence of such objective evidence.  SSR 12-2p directs an ALJ, in such cases, to consider a variety of evidence concerning the extent of the claimant's functional capacity:

> If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the

>person's attempts to obtain medical treatment for
>symptoms; and statements by other people about the
>person's symptoms.

Overall, the ALJ is directed to evaluate the credibility of this evidence in the same way as is done in other cases, taking into account the fact that fibromyalgia may cause both exertional and non-exertional limitations.

Here, the Court does not agree with Plaintiff's contention that the ALJ failed to examine all of the evidence of record concerning her fibromyalgia or that he made his decision solely on the basis that objective medical evidence did not confirm the degree of disability which she alleged. The ALJ looked at the medical evidence, but also considered Plaintiff's activities of daily living, including her part-time work activity, and took into account various factors which legitimately affected her credibility. Plaintiff has not made a direct attack on the ALJ's credibility finding, and it appears to be reasonable based upon the deference which is owed to that finding. An ALJ has a substantial amount of discretion to make judgments about a claimant's credibility, and a reviewing Court must give those judgments a substantial amount of deference. In the final analysis, the Court must give heed to the proposition that an ALJ's credibility finding is something that a reviewing court "may not disturb absent compelling reason." Smith v. Halter, 307 F.3d 377, 379 (6th Cir. 2001). Plaintiff has given none here. Consequently, the Court finds no merit in her second claim of error.

## VII.  Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be overruled and that judgment be entered in favor of the Defendant Commissioner.

## VIII.  Procedure on Objections

If any party objects to this Report and Recommendation,

that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a _de novo_ determination of those portions  of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

     The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation _de novo_, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See _Thomas v. Arn_, 474 U.S. 140 (1985); _United States v. Walters_, 638 F.2d 947 (6th Cir. 1981).

                                            /s/ Terence P. Kemp
                                            United States Magistrate Judge